UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SATISH DESHPANDE,

              Plaintiff,                  **MEMORANDUM & ORDER**

      -against-                                07-CV-375 (NGG) (VVP)

MEDISYS HEALTH NETWORK, INC., *et al.*,

              Defendants.
-----------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

      Defendants Medisys Health Network, Inc. ("Medisys"), Jamaica Hospital Medical Center ("Jamaica Hospital"), and David Rosen's ("Rosen") (collectively, "Defendants")[1] move to dismiss Plaintiff Dr. Satish Deshpande's ("Plaintiff" or "Deshpande") Title VII Complaint pursuant to Fed. R. Civ. P. 12 (b)(1) and (6). For the reasons set forth below, Defendants' motion is DENIED.

**I.    Background**

      Plaintiff makes the following allegations in his Amended Complaint. Plaintiff contracted with Defendants for medical privileges as an attending physician assigned to Jamaica Hospital. (Amended Complaint (Docket Entry # 2) at 1-2.) On December 31, 2004, Plaintiff was terminated from a salaried position at TJH Medical Services, P.C. ("TJH"), but was informed at the time of his termination that his privileges to practice as an independent contractor at Jamaica Hospital would not be curtailed. (Id. at 3.) On March 16, 2005, Plaintiff filed a complaint with

---

[1] On consent of the Plaintiff, Defendant The Medical Staff of Jamaica Hospital Medical Center was dismissed from this case on August 2, 2007. (See Minute Entry dated 8/02/2007.)

1

the Equal Employment Opportunity Commission ("EEOC"), and in June 2005, he filed a federal lawsuit against TJH alleging violations of his civil rights with respect to his termination. See Deshpande v. TJH Medical Svcs., P.C., 05-CV-2894.[2]  On June 17, 2005, Plaintiff applied to the "Department of Medicine" for renewal of his privileges at Jamaica Hospital. (Amended Complaint at 3.) Since 1994, his applications for renewal of privileges had been routinely granted for two-year periods, with no special conditions governing the renewals. (Id.) On November 28, 2005, Rosen, the President of Jamaica Hospital, notified Plaintiff that his privileges had been approved for one year and that he was subject to monitoring for his "communication, professionalism and resident supervision." (Id. at 4.) Plaintiff objected to the monitoring conditions and requested an opportunity to be heard but received no response from Rosen. (Id.)

Plaintiff claims that Defendants' curtailment of his hospital privileges was in retaliation for his EEOC complaint and his prior federal action, in violation of Title VII, 42 U.S.C. § 2000(e), Section 296 of the New York Human Rights Law, and Section 8-107(1)(a) of the New York City Human Rights Law. (Id.) Plaintiff also claims that "other similarly-situated physicians who had not complained about discrimination and who belonged to ethnicities other than that of plaintiff, and who had far more serious communication, professionalism and supervision issues than plaintiff, have not been subjected to monitoring or a reduction in the duration of their reasonably expected hospital privileges." Id. Finally, Plaintiff seeks damages but does not seek reinstatement of his hospital privileges. (Id. at 6.)

Defendants argue that (1) this court lacks subject-matter jurisdiction over Plaintiff's

---

[2] The docket sheet in the case indicates that the case was filed on June 16, 2005.

retaliation claim because it falls under the primary jurisdiction of the New York Public Health Council ("PHC"), (2) Plaintiff fails to state a claim for retaliation because he has not alleged a qualifying adverse employment action and the requisite causal connection between that action and his protected activity, and (3) Rosen cannot be held personally liable under Title VII. (Defendants' Memorandum of Law in Support of Defendants' Rule 12(B)(1) and (6) Motion to Dismiss ("Defs.' Br.") at 2.)

For the reasons set forth below, Defendants' motion to dismiss is DENIED in its entirety.

## II. Discussion

### A. Doctrine of Primary Jurisdiction

The doctrine of primary jurisdiction "comes into play whenever enforcement of [a] claim requires the resolution of issues, which, under a regulatory scheme, have been placed within the special competence of an administrative body." Johnson v. Nyack Hosp., 964 F.2d 116, 122 (2d Cir. 1992) (citation omitted). Under New York law, a hospital may curtail a physician's privileges only for reasons related to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the [physician]." N.Y. Pub. Health Law § 2801-b(1). Generally, a physician in New York challenging the termination of hospital privileges must first file a complaint with the PHC and may pursue the matter in the courts only after the PHC has had the opportunity to review the factual issues. See N.Y. Pub. Health Law § 2801-b(2); Bauman v. Mount Sinai Hosp., 452 F. Supp. 2d 490, 500 (S.D.N.Y. 2006). The rationale for this general rule is that the PHC has the "peculiar expertise to assess whether a hospital had a sound medical reason for terminating a physician's privileges." Nyack, 964 F.2d at 120.

The doctrine of primary jurisdiction is, however, a discretionary doctrine that will be

applied only where it serves at least one of two purposes: "uniformity" and "reliance on administrative expertise." Tassy v. Brunswick Hosp. Ctr., Inc., 296 F.3d 65, 68, 72 (2d Cir. 2002); see also United States v. W. Pac. R.R. Co., 352 U.S. 59, 66 (1956) ("Primary jurisdiction . . . recognizes that even though Congress has not empowered an agency to pass on the legal issues presented by a case . . . the agency's expertise may, nevertheless, prove helpful . . . in resolving difficult factual issues."). Rather than applying the doctrine in accordance with "fixed rules or formulas for its application . . . [i]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Tassy, 296 F.3d at 68.

Specifically, courts in this circuit have recognized two "narrow exceptions" to the doctrine's application. The first applies where the physician alleges that his or her privileges have been terminated for reasons unrelated to medical care and therefore do not require the particular expertise of the PHC. Bauman, 452 F Supp. 2d. at 500. The second applies where the physician seeks damages, but not reinstatement, and where the presence or absence of a proper medical reason for terminating the plaintiff's privileges is not dispositive of the plaintiff's claims. Id.; Mahmud v. Bon Secours Charity Health Sys., 289 F. Supp. 2d 466, 473 (S.D.N.Y. 2003).

Defendants argue that Plaintiff's only recourse for a claim involving diminished hospital privileges is to file a claim with the PHC in the first instance because the PHC has "sole jurisdiction" over such claims. (Defs' Br. at 3-4.) Plaintiff's failure to do so prior to filing the instant action, Defendants contend, divests this court of subject-matter jurisdiction. (Id.) Defendants' arguments are unavailing.

As an initial matter, Defendants are incorrect in their contention that the doctrine of

4

primary jurisdiction applies *whenever* a physician's claim involves diminished hospital privileges. See Tassy, 296 F.3d at 70-71 (concluding that the primary jurisdiction doctrine did not apply where defendants had terminated doctor's privileges based on alleged sexual harassment, "the resolution of which does not require the PHC's expertise"; rejecting Defendant's argument that prior circuit precedent established such a "broad rule.") Instead, as Tassy makes clear, the court must consider the aims of the primary jurisdiction doctrine in determining whether it applies in a particular case. In short, application of the doctrine is "discretionary." Id. at 72.

As to its application here, Plaintiff has alleged that in response to his protected activity, Defendants subjected him to monitoring of his "communication, professionalism and resident supervision" and renewed his privileges for one year instead of two. I find that these allegations do not establish that the twin aims of the doctrine — uniformity and reliance on administrative expertise — would be served by applying the doctrine in this case. First, the Supreme Court and the Second Circuit have emphasized that even where an agency is statutorily authorized to resolve a particular issue, the "justification for primary jurisdiction . . . disappears" when a particular case does not involve resolution of the complexities of, for instance, a regulatory scheme or rate structure, and thus does not run the risk of inconsistent interpretations of a broadly applicable rule or policy. See United States v. Radio Corp. of America, 358 U.S. 334, 350 (1959); Tassy, 296 F.3d at 69, 73.

Second, and more importantly, the allegations in Plaintiff's Amended Complaint do not establish that reliance on administrative expertise will be necessary for resolution of this case. Nothing on the face of the Amended Complaint suggests that Defendants' actions were related to

medical care as such or that the case will raise "issues of fact not within the conventional expertise of judges." Id. at 68 (quoting Far East Conference v. United States, 342 U.S. 570, 574 (1952). As a result, it is not clear at this stage of the litigation that the case will require the "particular expertise" of the PHC in order to resolve technical or complex questions of fact. See Tassy, 296 F.3d at 70-72 (holding that the doctrine of primary jurisdiction did not apply where the case did not involve "allegations of technical incompetence or inadequate patient care, d[id] not implicate any medical data or complex records, and would not benefit from the medical expertise of the PHC" because the primary issue was whether the physician committed sexual harassment);[3] cf. Bauman, 452 F. Supp. 2d at 500 (finding that the first exception to the application of the doctrine of primary jurisdiction did not apply where the particular expertise of the PHC would be useful to determine whether an investigation was thorough and truly related to patient care concerns). Indeed, if Defendants' implementation of monitoring requirements and alteration of the length of the renewal of Plaintiff's privileges were based simply upon perceived problems with Deshpande's interpersonal and supervisory skills, which his allegations suggest, the need for the PHC's expertise in resolving the factual issues in this case is greatly diminished. While Defendants may at some later point in the litigation proffer reasons for the changes in Deshpande's privileges that involve medical complexities, the court declines to apply the doctrine of primary jurisdiction to grant Defendants' motion based upon speculation that such

---

[3] Defendants argument that Tassy is inapposite because it involved sexual harassment is without merit. (See Reply Memorandum of Law in Further Support of Defendants' Rule 12(b)(1) and (6) Motion to Dismiss at 3.) Tassy set forth principles governing application of the doctrine of primary jurisdiction, namely that application of the doctrine is predicated in large part upon the need for the PHC's expertise to resolve factual issues. Although the court applied this principle to the resolution of a sexual harassment claim, it nowhere suggested that its holding was limited only to claims involving sexual harassment.

will be the case. Thus, the first exception to application of the doctrine applies here.

Similarly, the second exception likely applies as well, since Plaintiff seeks damages but not reinstatement. What is more, nothing in the Amended Complaint suggests that the presence or absence of a proper medical reason for altering the renewal of Plaintiff's privileges will be dispositive in this case. As with the first exception, the court notes the possibility that Defendants will at some point offer a "sound medical reason" for the alteration of Plaintiff's privileges. But whether that will be the case cannot be determined on the allegations currently before the court. Thus, the court exercises its discretion in declining to grant Defendants' motion based application of the doctrine of primary jurisdiction.

B. Title VII Retaliation Claim

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006)) (citation omitted). A recent decision by the Supreme Court requires that the complaint's "[f]actual allegations be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (internal citation omitted).[4]

---

[4] The Second Circuit has noted that Twombly adopted this standard by disavowing "the oft-quoted statement from Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). The Second Circuit has also noted that Twombly left "considerable uncertainty" regarding the breadth of the decision, given that the Conley standard has been part of the court's jurisprudence for decades. Id.; see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir.2007) (quoting Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007)).

To satisfy federal notice pleading standards "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Under this system, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." Id. at 511. Rather, a plaintiff's pleading "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests . . . [and] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. (citation and internal quotation marks omitted). "Only a statement of facts so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under 12(b)(6)." Patane v. Clark, 508 F.3d 106, 116 (2d Cir. 2007). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Swierkiewicz, 534 U.S. at 515 (citation omitted). Finally, the Second Circuit "has repeatedly warned that the pleading requirements in discrimination cases are very lenient, even *de minimis*." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003).

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To state a claim for retaliation in violation of Title VII , a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and

(3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d. Cir. 2007). The Supreme Court has recently held that a claim for retaliation under Title VII does not have to allege an action that adversely affects the terms and conditions of employment. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2414-15 (2006). Rather, any "materially adverse" action, defined as an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination," can constitute retaliation. Id. at 2415; accord Kessler v. Westchester County Dept. of Soc. Svcs., 461 F.3d 199, 207 (2d Cir. 2006). "Trivial harms" and "petty slights or mere annoyances that often take place at work and that all employees experience" are not sufficient to form the basis of a retaliation claim. White, 126 S. Ct. at 2415. However, whether a particular action rises above the trivial and is sufficient to support a retaliation claim "will often depend upon the particular circumstances." Id. at 215-16 ("[A] legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an act that would be immaterial in some situations is material in others.") (internal quotation marks and citation omitted).

Although this is a close call, the court cannot conclude at this stage of the litigation that Plaintiff has failed to put Defendants on notice of his retaliation claim against them or that he has failed "to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965. First, the parties do not dispute that Plaintiff's filing of an EEOC complaint and a federal lawsuit constitute "protected activity known to the defendant." Patane, 508 F.3d at 115. Second, Defendants correctly point out that close monitoring usually does not, without more, constitute a materially adverse action, even post-White's implementation of the more lenient "materially adverse" standard. See, e.g., Uddin v. City of New York, 427 F. Supp. 2d 414, 429 (S.D.N.Y.

9

2006) ("In other words, being advised and counseled does not, as a matter of law, constitute an adverse employment action."); Oliphant v. Conn. Dept. of Transp., No. 3:02cv700 (PCD) 2006 WL 3020890, *6 (D. Conn. 2006) ("Reprimands, threats of reprimands, and excessive scrutiny of an employee . . . do not constitute materially adverse employment actions."); Honey v. County of Rockland, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("However, courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.")

However, critical to the resolution of this motion, Plaintiff has alleged that the monitoring to which Defendants have subjected him and the one-year — rather than two-year — renewal of his privileges were selectively applied only to him and not to other similarly situated physicians. Some authority suggests that increased monitoring, in combination with an allegation that the monitoring was selectively applied, could contribute to a finding that an adverse employment action has taken place. See Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006) (noting that Plaintiff's failure to produce evidence other than her own perception that she received scrutiny *in excess of other employees* was fatal to her contention that she had suffered an adverse employment action); Uddin, 427 F. Supp. 2d at 429 ("Reprimands and excessive scrutiny of an employee can contribute to a finding that an adverse employment action has taken place."); see also Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) (holding that, in the First Amendment retaliation context, the plaintiff must show that (1) using an objective standard; (2) the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal . . . workplace."). Drawing all inferences in

10

favor of Plaintiff, Defendants' alleged actions, as selectively applied to him, could reasonably be construed as placing Plaintiff on a "probation" of sorts.

Moreover, under the standard set forth in White, this court cannot conclude that Defendants' alleged actions towards Deshpande were not "materially adverse"such that they "could well dissuade a reasonable worker from making or supporting a charge of discrimination." White, 126 S. Ct. at 2415. If in fact Deshpande's monitoring conditions and his one-year renewal were imposed selectively and without explanation, as Deshpande alleges, a reasonable worker could well conclude that the action was taken in response to his prior complaints of discrimination. As such, he could be dissuaded from making such a complaint in the future. See Id. The court, of course, makes no findings or predictions as to whether Plaintiff ultimately will succeed in showing that Defendants actions were "materially adverse" but concludes that his allegations are sufficient at the pleadings stage to state the second element of a retaliation claim.

Finally, the court rejects Defendants' argument that Plaintiff "can never establish any causal connection" between either his March 2005 EEOC complaint or his June 2005 federal lawsuit and the November 2005 one-year renewal of his hospital privileges. (Defs' Br. at 7-8.) Absent direct evidence of retaliation, "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) (internal quotation marks omitted). The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d

545, 554 (2d Cir. 2001).

Although Defendants cite to cases in which fewer than the five months alleged here has been found insufficiently close in time to establish a causal connection, those cases do not establish that such a period of time is insufficient as a matter of law. The court declines to reach that conclusion here. Plaintiff is not required at the pleading stage to establish a *prima facie* case of retaliation, see Swierkiewicz, 534 U.S. at 511, and his allegations that Defendants' allegedly retaliatory acts were caused by his protected activity are enough to state a claim. Plaintiff will have opportunity through discovery to produce direct evidence of a causal connection or to argue that, under the circumstances of this case, five months is temporally close enough to support an inference of causation. He has no such burden at the pleading stage.

Finally, because Plaintiff avers that he has not asserted a Title VII claim against Defendant Rosen but rather has asserted only claims under New York Human Rights Law and New York City Human Rights Law against Rosen (Pl. Br. at 6), the court need not address Defendants' argument that the Title VII claims against Rosen should be dismissed.

**III.   Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is DENIED. The parties are directed to proceed with discovery under the supervision of Magistrate Judge Viktor V. Pohorelsky.

SO ORDERED.

|  |  |
|---|---|
| Dated: May 7, 2008<br>Brooklyn, N.Y. | /s Nicholas G. Garaufis<br>NICHOLAS G. GARAUFIS<br>United States District Judge |