UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
SATISH DESHPANDE, M.D.,

          Plaintiff,          **MEMORANDUM AND ORDER**
                              07-CV-375(KAM)(VVP)

        - against -
MEDISYS HEALTH NETWORK, INC.,
*et al.,*

          Defendants.
-------------------------------X
**MATSUMOTO, United States District Judge:**

      Plaintiff Satish Deshpande, M.D. ("plaintiff" or "Dr.
Deshpande") brings this retaliation action pursuant to Title VII
of the Civil Rights Act of 1964, as amended, 42 U.S.C.
§§ 2000(e) *et seq.* ("Title VII"), the New York Human Rights Law
("NYHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City
Human Rights Law ("NYCHRL"), New York City Administrative Code
§ 8-107 *et seq.*, based on the defendants' decision to renew his
admitting privileges for one year, instead of two years, and to
monitor his interactions with residents.  Defendants Medisys
Health Network, Inc., The Jamaica Hospital Medical Center, the
Medical Staff of Jamaica Hospital Medical Center and David Rosen
(collectively, "defendants" or the "Hospital") move for summary
judgment pursuant to Federal Rule of Civil Procedure 56, arguing
that there are no genuine issues of material fact for trial and
that they are entitled to judgment as a matter of law.  Based
upon the submissions of the parties and oral argument held on
March 26, 2010, as stated in the court's order dated March 31,

2010, for the reasons stated below, defendants' motion is granted in its entirety.

**BACKGROUND**

The following facts, taken from the parties' statements pursuant to Local Civil Rule 56.1,[1] are undisputed unless otherwise indicated.  The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving plaintiff.

## I.   Plaintiff's Relationship with Defendants

Plaintiff, a physician descended from the Dravidian language region of southern India, was employed by Jamaica Hospital pursuant to a contract, starting on or about March 9, 1994.  (Doc. No. 58 in 05-CV-2894, Defs.' Summary Judgment 56.1 Statement of Facts ("Defs.' 56.1 in 05-CV-2894") ¶ 2 & Ex. A, Fifth Am. Compl. ¶ 7(a), (f) & Ex. E, Faculty Supervisor Contract.)  In or about January 1995, plaintiff's employment

---

[1] References to paragraphs of the parties' 56.1 statements include materials cited therein and annexed thereto.  Where specifically indicated, undisputed facts are also taken from submissions made in plaintiff's related case, *Deshpande v. TJH Medical Svcs., et. al*, No. 05-CV-2894.  The court notes that plaintiff filed one opposition in response to defendants' motions for summary judgment in cases 05-CV-2894 and 07-CV-0375, which defense submissions included two 56.1 statements, one memorandum of law and accompanying exhibits and affidavits.  Although plaintiff only docketed his opposition in case 05-CV-2894, the court considers those submissions in connection with defendants' motion for summary judgment in case 07-CV-0375.

with Jamaica Hospital was transferred to TJH Medical Services.[2] (Defs.' 56.1 in 05-CV-2894 ¶ 4 & Ex. A, Fifth Am. Compl. ¶ 7(d).)  On December 31, 2004, plaintiff's employment with TJH Medical Services was terminated.  (Doc. No. 31, Defs.' Summary Judgment 56.1 Statement of Facts ("Defs.' 56.1") ¶¶ 1-2 & Ex. A, Am. Compl. ¶ 8(a) & Ex. C, November 12, 2004 Termination Letter.)  The termination letter specifically stated that, although plaintiff's "employment relationship will terminate on December 31, 2004[, his] Medical Staff privileges will not be curtailed." (Defs.' 56.1, Ex. C, November 12, 2004 Termination Letter.)  Accordingly, during all relevant times, up to and including March 26, 2010, plaintiff continued to admit his internal medicine patients at Jamaica Hospital pursuant to his admitting privileges.  (Tr. of 3/26/10 Oral Argument at 79-80; Defs.' 56.1 ¶ 1 & Ex. C, November 12, 2004 Termination Letter & Ex. M, November 28, 2005 Reappointment Letter.)

In response to defendants' termination of his "employment relationship," plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 16, 2005 (the "EEOC complaint") and, on June 16, 2005, brought suit in the Eastern District of New York, assigned docket number 05-CV-2894, alleging, *inter alia*, Title VII discrimination and

---

[2] TJH Medical Services employs physicians who are assigned to hospitals within the Medisys Health Network, including Jamaica Hospital Medical Center, where plaintiff was assigned by TJH Medical Services.  (Defs.' 56.1 at ¶ 1 n.1.)

retaliation claims based on his ethnicity, race and national

origin (the "federal discrimination action" or *Deshpande v. TJH

Medical Svcs., et. al,* No. 05-CV-2894"). (Defs.' 56.1, Ex. A,

Am. Compl. ¶ 8(b); *see generally* Defs.' 56.1 in 05-CV-2894, Ex.

B, Compl.) Specifically, in the federal discrimination action,

plaintiff alleged that he was discriminated against because he

is from the Dravidian region of India, and that physicians from

the Gujarat region of India were treated more favorably than he.

(Defs.' 56.1 ¶ 15(a); *see generally* Defs.' 56.1 in 05-CV-2894,

Ex. B, Compl.) Plaintiff also contended that he was retaliated

against because he criticized what he perceived to be

defendants' favoritism toward Gujarati physicians in the

hospital, as well as the inadequate standard of care provided to

patients there.[3] (*See generally* Defs.' 56.1 in 05-CV-2894, Ex.

B, Compl.)

Plaintiff's instant complaint, filed January 25, 2007,

alleges that the defendants retaliated against him for filing

both his EEOC complaint and his federal discrimination action by

renewing his admitting privileges for a one-year, rather than a

two-year, period and by monitoring his interactions with the

---

[3] On March 26, 2010, this court granted defendants' motion for summary
judgment on the record in plaintiff's federal discrimination action, finding
that plaintiff's claims were barred on *res judicata* grounds and that, in any
event, plaintiff's claims were either time-barred or meritless. (Tr. of
3/26/10 Oral Argument at 52-79.) Accordingly, plaintiff's federal
discrimination action was dismissed. (3/26/10 Order in 05-CV-2894.)

Hospital's residents.  (Defs.' 56.1 ¶ 3 & Ex. A, Am. Compl. ¶ 8 (b), (h).)

## II.  **The Alleged Retaliatory Action and the Resident Complaints**

### A.  **Renewal of Plaintiff's Admitting Privileges and the Imposition of a Monitoring Condition**

The Hospital is obligated to evaluate the credentials of physicians who admit patients to the Hospital in accordance with New York State mandated privileging procedures, which require hospitals to "examine credentials of candidates for medical staff membership [hereinafter "privileges"] and make recommendations . . . on the appointment of candidates in accordance with the provisions of [10 NYCRR] and the New York Public Health Law."  (Defs.' 56.1 ¶ 7 (quoting 10 NYCRR § 405.4(b)(4)).)  After medical staff members are initially appointed, the medical staff must conduct "periodic reappraisals of its members, on at least, a biennial basis."  (Defs.' 56.1 ¶ 7 (quoting 10 NYCRR § 405.4(b)(4)).)

In order for a physician to be re-accredited or to have his or her admitting privileges renewed at Jamaica Hospital, the physician must submit an application to the Hospital.  (Defs.' 56.1 ¶ 8.)  The Hospital's Office of Regulatory Affairs confirms that the application is complete, and forwards that application to the appropriate medical department for recommendation.  (Defs.' 56.1 ¶ 8.)  Once the

medical department reviews the application and finds that the information and records are sufficient, the chairperson of the respective department recommends the application and forwards it to the Credentials Committee. (Defs.' 56.1 ¶ 8.) The Credentials Committee then reviews the application, discusses any pending issues, and determines whether to approve the application. (Defs.' 56.1 ¶ 8.) If the application is not approved, the Credentials Committee makes a determination as to how to proceed. (Defs.' 56.1 ¶ 8.) If the application is approved, it is then forwarded to the Medical Board, which reviews the Credentials Committee's approval and affirms it. (Defs.' 56.1 ¶ 8.) The Medical Board then sends the application for final approval to the Board of Trustees. (Defs.' 56.1 ¶ 8.)

Pursuant to the foregoing procedure, in June 2005, plaintiff was asked to reapply for his admitting privileges, and plaintiff did so on June 17, 2005.[4] (Defs.' 56.1 ¶ 9 & Ex. A, Am. Compl. ¶ 8(c); Doc No. 82 in 05-CV-2894, Pl.'s Aff. in Opp. ¶ 17.) After proceeding through the standard process outlined, *supra*, the Credentials Committee met on October 6, 2005 to

_____

[4] As noted, *supra*, plaintiff retained his admitting privileges with defendants, even after his termination from TJH Medical Services. (Defs.' 56.1, Ex. C, November 12, 2004 Termination Letter; Tr. of 3/26/10 Oral Argument at 79.) His privileges were renewed on a biennial basis until 2005, after which they were renewed on a yearly basis. (Defs.' 56.1, Ex. C, November 12, 2004 Termination Letter & Ex. M, November 28, 2005 Reappointment Letter; Tr. of 3/26/10 Oral Argument at 79.) Based on plaintiff's representation at the March 26, 2010 oral argument, plaintiff's privileges were renewed yearly until 2008, at which point his privileges were again renewed on a biennial basis. (Tr. of 3/26/10 Oral Argument at 79.)

address the applications of various practitioners, including

plaintiff, against whom several medical residents had filed

formal complaints.  (Defs.' 56.1 ¶¶ 5, 10 & Ex. F.)  The October

6, 2005 Credentials Committee Meeting Minutes contain the

following under the heading, "VII. New Business, Name: Satish

Deshpande, M.D., Department: Medicine":

> At the request of the Chairman of the Department of
> Medicine, the committee was asked to review the
> reappointment application of this physician.  Due to
> extenuating circumstances, the Department Chairman
> declined to take action on the reappointment.  After
> discussion, it was agreed that the reappointment would
> be deferred with the recommendation that a letter be
> forwarded to the physician clarifying the hospital's
> philosophy, mission and Resident involvement relative
> to patient care.[5]

---

[5] Defendants offer undisputed evidence that, at the October 6, 2005 meeting, the Credentials Committee discussed complaints about plaintiff lodged by several medical residents regarding plaintiff's interactions with them, and how plaintiff's lack of communication with the residents raised concerns about patient care and the Hospital's compliance with graduate medical education program standards.  (Defs.' 56.1, Ex. H, Deposition of Dr. William Lynch at 17-20, 41-42, 47, 52-54 (stating that, at the October 6, 2005 meeting, issues regarding "Dr. Deshpande's reappointment to the medical staff . . . related to his lack of communication with the resident staff and what types of difficulties . . . this created for the hospital in terms of safety and care of patients . . .[and] what kind of problem . . . this potentially involved with resident education and the [American Counsel for Graduate Medical Education] committee, in terms of monitoring the quality of resident education" were all discussed).)  Plaintiff claims that "the minutes of the [C]redentials [C]ommittee does [sic] not show that there was any discussion of any complaints regarding plaintiff" and further argues that "no such conversation could have occurred, as at least three of the five complaints, according to their dates, had not yet occurred."  (Doc. No. 83 in 05-CV-02894, Pl.'s 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s 56.1") ¶ 11.)  Plaintiff also points to what he claims is the 30(b)(6) deposition testimony of Dr. Anthony DiMaria, Secretary of the Board of Trustees of Jamaica Hospital Medical Center, who attended the October 6, 2005 Credentials Committee meeting, and argues that Dr. DiMaria's lack of memory of that meeting supports plaintiff's argument that the resident complaints were not discussed therein.  (Pl.'s 56.1 ¶ 11.)  As will be discussed more fully, *infra*, plaintiff mistakenly identifies Dr. DiMaria as the defendants' 30(b)(6) witness.  (*See, e.g.*, Tr. of 3/26/10 Oral Argument at 39-41.)

(Defs.' 56.1, Ex. I, October 6, 2005 Credentials Committee
Minutes at 3.)

Accordingly, on October 6, 2005, the Credentials
Committee sent plaintiff a letter reiterating the hospital's
"philosophy and mission relative to patient care . . . [which]
includes close communication with Residents on a 24 hour per
day, 7 day per week basis,"[6] asked him to sign the letter,
indicating that he was in agreement with that philosophy and
mission and further stated, "[i]f this process does not meet
with your approval, we would recommend that you seek an
institution which best suits your needs." (Defs.' 56.1 ¶ 12 &
Ex. J, October 6, 2005 Letter; Doc No. 82 in 05-CV-2894, Pl.'s
Aff. in Opp. ¶ 18.)  Plaintiff signed the letter. (Defs.' 56.1
¶ 12 & Ex. J, October 6, 2005 Letter & Ex. K, November 3, 2005
Credentials Committee Minutes at 3; Doc No. 82 in 05-CV-2894,
Pl.'s Aff. in Opp. ¶ 18.)

The Credentials Committee met again on November 3,
2005.  (*See generally* Defs.' 56.1, Ex. K, November 3, 2005
Credentials Committee Minutes.)  During this meeting, the
Committee acknowledged that it had received a signed letter from
plaintiff "indicating his support of [Jamaica Hospital Medical

---

[6] Jamaica Hospital is obligated to monitor its Residency Program pursuant to
the mandated standards of the American Counsel for Graduate Medical Education
("ACGME"), which is the national accrediting agency for Residency Programs.
(Defs.' 56.1 ¶ 4).  ACGME requires, *inter alia*, that hospitals insure that
students are properly supervised.  (Defs.' 56.1 ¶ 4).

Center's] philosophy and mission regarding patient care."
(Defs.' 56.1, Ex. K, November 3, 2005 Credentials Committee
Minutes at 3.)  Thus, "[a]fter review and discussion, the
Committee *approved a one-year* re-appointment to the medical
staff.  The Committee agreed that the physician should be
advised that he will be monitored relative to the following
activities:  Residency supervision, professionalism and
communication."  (Defs.' 56.1, Ex. K, November 3, 2005
Credentials Committee Minutes at 3 (emphasis in original).)

Thereafter, on November 28, 2005, defendants sent
plaintiff a letter, indicating that he had been reappointed to
the Department of Medicine of Jamaica Hospital Medical Center
"for a one-year period ending November 28, 2006 . . . with the
rank of Attending," and enclosing a copy of his current
Delineation of Privileges form.  (Defs.' 56.1, Ex. M, November
28, 2005 Reappointment Letter & Ex. O, November 28, 2005
Approved Delineation of Privileges.)  The letter specifically
noted that the reappointment "is predicated on your agreement to
support Jamaica Hospital Medical Center's philosophy and mission
as specified in the letter dated October 6, 2005 from the
Credentials Committee" and advised the plaintiff that his
"professionalism, communication and Resident supervision will be
monitored for consideration of the continuation of [his]
reappointment."  (Defs.' 56.1, Ex. M, November 28, 2005

Reappointment Letter; Doc No. 82 in 05-CV-2894, Pl.'s Aff. in Opp. ¶ 19.) The letter did not detail how plaintiff's "professionalism, communication and Resident supervision" would be "monitored." (*See generally* Defs.' 56.1, Ex. M, November 28, 2005 Reappointment Letter.)

Plaintiff sent a letter to defendant on December 15, 2005, expressing his disappointment with defendants' decision and asked to be reconsidered for a two-year term without monitoring. (Doc. No. 83, Pl.'s 56.1, Ex. 64, December 15, 2005 Letter.) Plaintiff alleges that he received no response. (Defs.' 56.1, Ex. A, Am. Comp. ¶ 8(g).)

### B. The Resident Complaints

It is undisputed that there are five written complaints from six of the Hospital's residents, regarding plaintiff's supervision of them.[7] (Defs.' 56.1 ¶ 5 & Ex. F, Resident Complaints.) Specifically, the resident complaints state that Dr. Deshpande was overly negative, critical and insulting to the residents; that Dr. Deshpande would shout at the residents and act harshly and unprofessionally towards them; that Dr. Deshpande instructed a resident to perform a genital exam on a patient in a public hallway of the Hospital; that Dr. Deshpande mistreated the residents and accused them of not

---

[7] A total of six residents filed formal complaints against Dr. Deshpande; the March 23, 2005 complaint is signed by two different residents. (Defs.' 56.1, Ex. F, Resident Complaints.)

providing adequate patient care. (Defs.' 56.1 ¶ 5 & Ex. F,
Resident Complaints.) The complaints are dated October 25,
2003, October 25, 2004, March 23, 2005, November 11, 2005 and
December 22, 2005.[8] (Defs.' 56.1, Ex. F, Resident Complaints.)

Plaintiff does not dispute the existence or the
content of these complaints, but instead argues that "three of
the five complaints are dated in late 2005" and that it is
"highly suspicious that three of the alleged five complaints
were all written in such a close time proximity." (Doc. No. 83,
Pl.'s 56.1 ¶ 5.)

### III.   **Defendants' Motion for Summary Judgment**

Defendants move for summary judgment contending that:
(1) plaintiff's claims, which were dismissed on the merits in
two state court decisions, are barred by *res judicata*; (2)
plaintiff was not an "employee" of defendants during the time in
question and is therefore precluded from sustaining employment
retaliation claims under Title VII, the NYHRL and the NYCHRL;
and (3) plaintiff has failed to proffer evidence to establish a
*prima facie* case of retaliation under Title VII, the NYHRL and
the NYCHRL, much less evidence to refute the defendants'
legitimate business reasons for their employment actions. (Doc.
No. 31, Defs.' Mem. at 2.)

---

[8] The fifth resident complaint is undated, but is marked received by the
Department of Medicine on December 22, 2005. (Defs.' 56.1, Ex. F, Resident
Complaints.)

## DISCUSSION

### I.  Summary Judgment Standard

The court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation and internal quotation marks omitted).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation and internal quotation marks omitted).  Moreover, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001). Nevertheless, the nonmoving party may not rest "merely on allegations or denials" but must instead "set out specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e)(2); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture [are] insufficient to preclude the granting of the motion.").

## II.   *Res Judicata*

Defendants argue that plaintiff's claims for retaliation in the instant federal court action are barred by the doctrine of *res judicata*, also known as claim preclusion, because the retaliation claims arise out of the same facts asserted by plaintiff in two separate state court actions, both of which were dismissed — one on a motion to dismiss and one on a motion for summary judgment. (Defs.' 56.1 ¶¶ 15(b), (d); Defs.' Mem. at 4-6.) The court focuses on the second state court action, *Deshpande v. Medisys Health Network, Inc., et. al*,

Index No. 29426/2007, which is more closely analogous as to the temporal period to the instant action.

### A. The Federal and State Court Actions

On January 25, 2007, plaintiff filed the instant action in the Eastern District of New York against Medisys Health Network, Inc., The Jamaica Hospital Medical Center, the Medical Staff of Jamaica Hospital Medical Center and David Rosen (the "federal court action"), alleging retaliation based on the filing of an EEOC complaint and the federal discrimination action, *Deshpande v. TJH Medical Svcs.*, No. 05-CV-2894, also filed in the Eastern District of New York. (Defs.' 56.1, Ex. P, Compl. in 05-CV-2894.) The complaint was amended on May 4, 2007. (Defs.' 56.1, Ex. A, Am. Compl.) The factual assertions in the Amended Complaint in the federal court action cover the period between December 31, 2004 and December 15, 2005. (*See generally* Defs.' 56.1, Ex. A, Am. Compl.; Doc No. 80 in 05-CV-2894, Pl.'s Memorandum in Opposition to Motion for Summary Judgment ("Pl.'s Opp.") at 4.)

On March 25, 2008, plaintiff filed a lawsuit in the Supreme Court of New York, Queens County, against Medisys Health Network, Inc., The Jamaica Hospital Medical Center and David Rosen, the same defendants named in the federal court action, in addition to Accreditation Council on Graduate Medical Education, Thomas Santucci, Jr., M.D., and Richard Pinsker, M.D. (the

14

"state court action").[9] (Defs.' 56.1, Ex. U, Compl. in

29426/2007 at 1.) The complaint in the state court action

alleged, *inter alia*, that plaintiff suffered retaliation in

violation of New York Labor Law § 741 because of plaintiff's

complaints about improper patient care at the hospital. (Defs.'

56.1, Ex. U, Compl. in 29426/2007 at 13.) The factual

assertions in the state court complaint covered the exact same

time period as the complaint in the federal court action – i.e.

December 31, 2004 through December 15, 2005. (*See generally*

Defs.' 56.1, Ex. U, Compl. in 29426/2007; Pl.'s Opp. at 4-5.)

On October 6, 2008, the Honorable Charles J. Markey of

the Supreme Court of New York, Queens County, granted

defendants' motion to dismiss plaintiff's complaint, finding,

*inter alia*, that plaintiff failed to state a cause of action

under Labor Law § 741. (Defs.' 56.1, Ex. V, 10/6/08 Short Form

Order in 29426/2007 at 2.) Noting that "this is plaintiff's

fourth lawsuit and seventh complaint against the Hospital

arising out of his former employment and current privileges with

the Hospital," Judge Markey also granted defendants' motion to

enjoin the plaintiff from filing additional lawsuits based on

his former employment and current privileges with defendant

without the court's permission. (Ex. V, 10/6/08 Short Form

Order in 29426/2007 at 2, 4-5.) On appeal, the Appellate

---

[9] Plaintiff did not name the Medical Staff of Jamaica Hospital Medical Center
in the state court action.

Division, Second Department, upheld the dismissal of the Labor Law § 741 claim, but found that enjoining the plaintiff from commencing further litigation against defendants to be unwarranted because "[p]ublic policy generally mandates free access to the courts, and the record does not reflect that the plaintiff was abusing the judicial process through vexatious litigation." *Deshpande v. Medisys Health Network, Inc.*, 70 A.D.3d 760, 896 N.Y.S.2d 103, 106-07 (2d Dep't 2010) (citations omitted).

### B. Doctrine of *Res Judicata*

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). To prove that a claim is precluded under the *res judicata* doctrine, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (citation and internal quotation marks omitted) (alterations in original). As the Second Circuit recently noted:

> When "determin[ing] the effect of a state court
> judgment, federal courts . . . are required to apply
> the preclusion law of the rendering state . . . .
> Under New York's transactional approach to [*res
> judicata*], once a claim is brought to a final
> conclusion, all other claims arising out of the same
> transaction or series of transactions are barred, even
> if based upon different theories or if seeking a
> different remedy."

*Harris v. Beth Israel Med. Ctr.*, No. 09-CV-1416, 2010 WL 605743,

at *1 (2d Cir. Feb. 22, 2010) (internal citations omitted)

(alterations in original); *see also Cieszkowska v. Gray Line New

York*, 295 F.3d 204, 205 (2d Cir. 2002) ("Even claims based upon

different legal theories are barred provided they arise from the

same transaction or occurrence." (citation and internal

quotation marks omitted)).  Therefore, if plaintiff's claims of

retaliation would be barred from further litigation in New York

state court, they must also be barred in federal court.  *See

Burka v. N.Y. City Transit Auth.*, 32 F.3d 654, 657 (2d Cir.

1994) ("[A] state court judgment has the same preclusive effect

in federal court as the judgment would have had in state

court.").

### C. Analysis

It is undisputed that the parties to the federal court

action were either parties to the state court action or were in

privity with those parties.  (*See generally* Defs.' 56.1, Ex. A,

Am. Compl. & Ex. U, Compl. in 29426/2007; Pl.'s Opp. at 4-5; Tr.

of 3/26/10 Oral Argument at 17.)  Further, plaintiff concedes

that the factual assertions in the state court complaint covered the exact same time period as the complaint in the federal court action – namely, December 31, 2004 through December 15, 2005. (*See generally* Defs.' 56.1, Ex. A, Am. Compl. & Ex. U, Compl. in 29426/2007; Pl.'s Opp. at 4-5.) Moreover, a comparison of both complaints reveals that plaintiff seeks redress for the same alleged retaliatory conduct in both actions – the shortening of the duration of the term of his admitting privileges from two years to one year and subjecting him to a monitoring condition. (*See* Defs.' 56.1, Ex. A, Am. Compl. & Ex. U, Compl. in 29426/2007.) Additionally, plaintiff does not dispute that the State Supreme Court decision dismissing the state court action is a judgment on the merits, *see Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009); nor does plaintiff allege that he was denied a full and fair opportunity to litigate his retaliation claims before the State Supreme Court.

Plaintiff, however, attempts to avoid the dismissal of his claims on *res judicata* grounds by asserting that, because the State Supreme Court's decision is under appeal, the decision is not "final" and therefore, *res judicata* does not apply. (Pl.'s Opp. at 13-14.) First, there is no longer an appeal pending in plaintiff's state court action.[10] After plaintiff

---

[10] "In evaluating the *res judicata* effect of a prior action, 'courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to

submitted his opposition, the Appellate Division, Second

Department, issued a decision in plaintiff's appeal.  *See*

*Deshpande*, 70 A.D.3d at 760, 896 N.Y.S.2d at 103.  Moreover,

even if there were an appeal currently pending, "[u]nder New

York law, the pendency of an appeal does not deprive a

challenged judgment of preclusive effect."  *Arnold v. Beth*

*Abraham Health Servs.*, *Inc.*, No. 09-CV-6049, 2009 WL 5171736, at

*4 (S.D.N.Y. Dec. 30, 2009) (collecting cases).

    Plaintiff next argues that the instant federal court

action is not barred by *res judicata* because it derives from

"different transactions" than the state court action.  (Pl.'s

Opp. at 15.)  Here, the main difference between the state court

action and the federal court action is the *basis for the alleged*

*retaliation*.  (Pl.'s Opp. at 15; Doc. No. 32, Defs.' Reply at 3-

4.)  That is, plaintiff alleges in the state court action that

defendant retaliated against him in response to plaintiff's

complaints about improper patient care at the Hospital, whereas

in the instant federal court action, plaintiff alleges that

defendant retaliated against him because he filed an EEOC

complaint and the federal discrimination action.  (Pl.'s Opp. at

15; Defs.' Reply at 3-4.)  Defendants argue that this is a

distinction without a difference, and "the fact that plaintiff

_____

establish the fact of such litigation and related filings.'"  *Young v.*
*Suffolk County,* --- F. Supp. 2d ----, 2010 WL 1424008, at *21 (E.D.N.Y. Apr.
9, 2010) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.
1991)).

labeled his retaliation claim a whistleblower claim in [the state court action] and an EEOC retaliation claim [in the federal court action] does not allow him to escape the [preclusive] effects of the doctrine of *res judicata*." (Defs.' Reply at 3-4.)

The Second Circuit has made clear that "it is immaterial that the federal complaint relies upon a different legal theory or seeks an alternative form of relief" when the factual allegations at the heart of both federal and state complaints constitute a single transaction. *Harris*, 2010 WL 605743, at *2. However, a "previous adjudication will have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first." *Singh v. U.S. Sec. Assocs.*, No. 05-CV-5333, 2006 WL 2460642, at *5 (S.D.N.Y. Aug. 10, 2006) (quoting *Sec. and Exch. Cmm'n v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1463-64 (2d Cir. 1996) (internal quotation marks omitted)).

Here, the timeline of events makes clear - and plaintiff conceded as much in his submissions and at oral argument - that plaintiff could have alleged retaliation based on the filing of the EEOC complaint and the federal discrimination action, in addition to his claim of retaliation

based on alleged improper patient care, in his complaint in the state court action, because all of the incidents relevant to the alleged retaliation claims had occurred before he initiated the state court action. (*See, e.g.*, Tr. of 3/26/10 Oral Argument at 18; Pl.'s Opp. at 16 (stating that plaintiff could have moved the state court to add the federal claims or added the state claims to his federal court case but refrained from doing so because there was no guarantee that the respective courts would have heard all the claims together)); *see also Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 525 (2d Cir. 2001) (noting that state and federal courts have concurrent jurisdiction over Title VII claims). Plaintiff filed the state court action on March 25, 2008, between two to three years after: (1) he filed the EEOC complaint on March 16, 2005; (2) he filed the federal discrimination action on June 16, 2005; and (3) defendants notified him that he would be reappointed for a one-year term with monitoring on November 28, 2005.

Considering the parties' arguments, the court notes that different evidence would be required to support plaintiff's claims that he was retaliated against because he complained about improper patient care at the Hospital than would be required to support plaintiff's claims that he was retaliated against because he engaged in protected activity. Accordingly, out of an abundance of caution, the court determines, for

purposes of defendants' instant motion, that *res judicata* does not bar plaintiff's instant retaliation claims, and will address their merits.

## III. __Plaintiff's Retaliation Claims__

### A. Standard of Review

"Employment discrimination cases raise special issues on summary judgment." *Kenney v. New York City Dep't of Educ.*, No. 06-CV-5770, 2007 U.S. Dist. LEXIS 77926, at *7 (S.D.N.Y. Oct. 22, 2007). Specifically, employment discrimination cases that involve a dispute concerning the "employer's intent and motivation," may not be suitable for summary judgment. *Id.; see Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The Second Circuit has noted, however, that "we went out of our way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks and citations omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact.'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)); *Holcomb*, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more

22

than conclusory allegations to resist a motion for summary judgment").

## B. Plaintiff's Title VII Retaliation Claim

Title VII prohibits an employer from retaliating against an employee who engages in protected activity by providing as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must put forward evidence sufficient to permit a rational trier of fact to find that: (1) that plaintiff engaged in protected activity; (2) that the employer was aware of the protected activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006); *Buchanan v. Hilton Garden Inn Westbury*, No. 06-CV-308, 2008 WL 858986, at *12 (E.D.N.Y. Mar. 31, 2008). "In determining whether this initial burden is satisfied in a Title VII retaliation claim, the court's role in

evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrandt Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

Once a plaintiff has satisfied his *prima facie* burden, a presumption of retaliation arises, and the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004). After the defendant offers such an explanation, the burden then shifts back to plaintiff to demonstrate that the proffered explanation by defendant is a pretext for retaliatory animus based upon protected Title VII activity. *See King v. Interstate Brands Corp.*, No. 02-CV-6470, 2009 WL 1162206, at *16 (E.D.N.Y. Apr. 29, 2009) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). "A plaintiff can sustain this burden by proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action].'" *Hicks*, 593 F.3d at 164-65 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)) (alterations in original). At

this stage, "plaintiff may no longer rely on the presumption raised by the *prima facie* case, but may still prevail by showing, without the benefit of the presumption, that the [adverse] determination was in fact the result of . . . [retaliation]." *Holcomb*, 521 F.3d at 138.

### 1. *Prima Facie* Case of Retaliation

The parties do not dispute that plaintiff's filing of an EEOC complaint and the federal court action constitute "protected activity," or that defendants were aware of plaintiff's protected activity. However, defendants contend that plaintiff has failed to proffer evidence of a *prima facie* case of retaliation because: (1) plaintiff cannot prove he suffered an adverse employment action because he was not an employee of the defendants at any time relevant to this action; (2) the minor alterations as to the duration, but not the scope, of the plaintiff's privileges and the imposition of a monitoring condition do not constitute adverse employment actions; and (3) plaintiff has not established a causal connection between the protected activity and the alleged adverse employment action. (Defs.' Mem. at 7-11.)

### a. Plaintiff's Employment Status

Defendants first argue that plaintiff's claims for retaliation under Title VII are not sustainable because plaintiff admits in his deposition that he was not an "employee"

of defendants when the alleged retaliation occurred, and therefore could not have suffered an "adverse employment action" necessary to establish a *prima facie* retaliation case. (Defs.' Mem. at 7-9; Defs.' 56.1 Statement in 05-CV-2894, Ex. C, 10/18/07 Deposition of Dr. Satish Deshpande at 9-10.)

Title VII protects employees, not independent contractors. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000). *See also Kapiamba v. Securitas Sec. Serv.*, No. 07-CV-7262, 2008 U.S. Dist. LEXIS 34559, at *5-6 (S.D.N.Y. Apr. 29, 2008); *Tagare v. Nynex Network Sys. Co.*, 994 F. Supp. 149, 154 (S.D.N.Y. 1997) ("Title VII protects only 'employees'; independent contractors may not obtain relief under the statute."). However, courts in this circuit look "beyond mere labels in assessing whether a defendant is an employer," *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 489 (S.D.N.Y. 1999), and apply the common law of agency to determine whether an individual is an independent contractor or an employee for the purposes of Title VII with reference to the thirteen factors articulated by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989). *See Rohn Padmore, Inc. v. LC Play Inc.*, 06-CV-0498, 2010 WL 93109, at *9 (S.D.N.Y. Jan. 11, 2010); *Eisenberg*, 237 F.3d at 113-14; *Attis v. Solow Realty Dev. Corp.*, 522 F. Supp. 2d 623, 627 (S.D.N.Y. 2007). These factors are:

> [1] the hiring party's right to control the
> manner and means by which the product is
> accomplished ... [;][2] the skill required; [3]
> the source of the instrumentalities and tools;
> [4] the location of the work; [5] the duration of
> the relationship between the parties; [6] whether
> the hiring party has the right to assign
> additional projects to the hired party; [7] the
> extent of the hired party's discretion over when
> and how long to work; [8] the method of payment;
> [9] the hired party's role in hiring and paying
> assistants; [10] whether the work is part of the
> regular business of the hiring party; [11]
> whether the hiring party is in business; [12] the
> provision of employee benefits; and [13] the tax
> treatment of the hired party.

*Reid*, 490 U.S. at 751-52 (footnotes omitted).[11]  In applying the

*Reid* factors, "a court must disregard those factors that, in

light of the facts of a particular case, are (1) irrelevant or

(2) of 'indeterminate' weight." *Eisenberg*, 237 F.3d at 114.

Although no single *Reid* factor is dispositive, the Second

Circuit has found that in the context of anti-discrimination

cases, the "'greatest emphasis' should be placed on the first

factor - that is, on the extent to which the hiring party

controls the 'manner and means' by which the worker completes

his or her assigned tasks." *Id.* (quoting *Frankel v. Bally*,

---

[11] Neither party addressed the *Reid* factors in their summary judgment
submissions; defendants relied on plaintiff's admission that he was not an
"employee" of defendants during the time in question and, although defendants
dedicated an entire section of their summary judgment motion to this
argument, plaintiff skirted the issue entirely.  (*See generally* Pl.'s Mem. in
Opp.)  Consequently, the court gave the parties an additional opportunity to
brief the issue on March 24, 2010 (3/24/10 Minute Entry), and the parties
submitted letter memoranda on the issue on March 25, 2010.  (Doc. No. 34,
Defs.' 3/25/10 Letter Br.; Docket 05-CV-2894, Doc. No. 88, Pl.'s Corrected
Supplemental Mem. of Law in Opp.)  Plaintiff again incorrectly docketed his
supplemental submission in the related case, *Deshpande v. TJH Medical Svcs.,
et. al*, No. 05-CV-2894.

Inc., 987 F.2d 86, 90 (2d Cir. 1993)); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 227-28 (2d Cir. 2008) ("What is at issue is not merely the right to dictate the outcome of the work, but the right to control the 'manner and means' by which the hiree accomplishes that outcome."). "The issue of whether a hired worker is an independent contractor or an employee is 'typically a question for the factfinder, unless the evidence in the record relevant to this question is undisputed, in which case a court may resolve the issue as a matter of law.'" *Nazinitsky v. Fairmont Ins. Brokers, Ltd.*, No. 06-CV-5555, 2010 WL 836766, at * 8 (E.D.N.Y. Mar. 8, 2010) (quoting *Murphy v. Guilford Mills, Inc.*, No. 02-CV-10105, 2005 WL 957333, at *5 (S.D.N.Y. Apr. 22, 2005)).

Here, it is undisputed from the record that: (1) plaintiff admitted in his deposition that, as a "private attending" with admitting privileges, he was (and is) not an employee of defendants or any entity associated with defendants (Defs.' 56.1 Statement in 05-CV-2894, Ex. C, 10/18/07 Deposition of Dr. Satish Deshpande at 9-12); (2) plaintiff describes in his Amended Complaint his privileges with defendant as "privileges[] to practice as an independent contractor" (Defs.' 56.1, Ex. A, Am. Compl. ¶ 8(a)); (3) the defendants terminated their "employment relationship" with plaintiff on December 31, 2004 (Defs.' 56.1, Ex. C, November 12, 2004 Termination Letter); and

(4) plaintiff based his federal discrimination action (05-CV-2894) and state court discrimination action (*Deshpande v. TJH Medical Svcs., et. al*, Index No. 27808/2005) on, *inter alia*, the fact that defendants terminated his employment on December 31, 2004. (*See, e.g.*, Pl.'s Aff. in Opp. at ¶¶ 14-16 ("defendants terminated my salaried position").)

Defendants contend that plaintiff's admission under oath that he was not an employee when the alleged retaliation occurred is dispositive of his status, and argue in the alternative that plaintiff was not an employee under the *Reid* factors. (*See generally* Defs.' 3/25/10 Letter Br.) Specifically, defendants point to admissible and undisputed evidence in the record that, at all relevant times, defendants did not exercise control over the manner and the means of the performance of plaintiff's job functions, in that plaintiff is fully responsible for bringing his own patients to the hospital and providing treatment to his patients, that defendants do not assign him patients to treat, that plaintiff billed the patients he treated at the hospital and that plaintiff maintained privileges at several hospitals and nursing home facilities as well as maintained private offices where he saw his patients. (Defs.' 3/25/10 Letter Br. at 1-2; Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 129-130; Defs.' 56.1 Statement in 05-CV-2894, Ex. C, 10/18/07 & 12/6/07 Deposition of

Dr. Satish Deshpande at 9-14, 512-14 & Ex. I, Deposition of Dr. Thomas Santucci at 122-23.) Defendants further proffer undisputed evidence that during the relevant period, plaintiff received no salary, compensation or other employee benefits from defendants (Defs.' 56.1 Statement in 05-CV-2894, Ex. C, 12/6/07 Deposition of Dr. Satish Deshpande at 522-23 & Ex. I, Deposition of Dr. Thomas Santucci at 122-23), that plaintiff had (and has) full discretion over when and how long he works (*id.*, Ex. I, Deposition of Dr. Thomas Santucci at 122-23), that plaintiff was (and is) wholly in charge of the location of his work (*id.*, Ex. C, 10/18/07 & 12/6/07 Deposition of Dr. Satish Deshpande at 9-14, 512-14; Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 129-130), that plaintiff was (and is) not treated as an employee for tax purposes, (Defs.' 56.1 Statement in 05-CV-2894, Ex. C, 12/6/07 Deposition of Dr. Satish Deshpande at 514-515), that plaintiff was (and is) considered a "voluntary" physician (*id.*, Ex. I, Deposition of Dr. Thomas Santucci at 122-23) and "private attending" but not an employee of defendants. (*Id.*, Ex. C, 10/18/07 Deposition of Dr. Satish Deshpande at 10-14.) Defendants also argue that the high level of specialization required to be a physician is strongly indicative of non-employee status. (Defs.' 3/25/10 Letter Br. at 2.) Finally, defendants cite to case law supporting the proposition that a physician with admitting privileges is not considered an

employee under agency law or Title VII. (*See* Defs.' Mem. at 8
(collecting cases); Defs.' 3/25/10 Letter Br. at 2-3 (collecting
cases).)

On the other hand, plaintiff argues that, although he
admitted he was not an employee of defendants, an agency
relationship nonetheless existed between the parties sufficient
for Title VII protections to attach.  In support of this
argument, plaintiff asserts that, pursuant to his admitting
privileges, he was able to utilize the defendants' hospital
equipment, staff, and space (Tr. of 3/26/10 Oral Argument at 22;
Pl.'s Corrected Supplemental Mem. of Law in Opp. at 9), and
that, although he did not receive compensation from defendants,
the retention of his privileges was a form of remuneration.
(Tr. of 3/26/10 Oral Argument at 25, 27-28; Pl.'s Corrected
Supplemental Mem. of Law in Opp. at 10.)

Plaintiff also points to evidence in the record
suggesting that defendants exercised some degree of control over
the manner and means of the performance of his functions such
that an employer/employee relationship may have existed.[12]

---

[12] Most of plaintiff's submissions on this point are either irrelevant,
conclusory arguments, or not supported by admissible evidence in the record.
For example, instead of pointing to evidence indicating that plaintiff and
defendants had an employer/employee relationship *at the time relevant to the
instant suit*, plaintiff cites to his 1994 Faculty Advisor contract, which was
concededly terminated in December 2004, *before the alleged retaliation
occurred.* (*See generally* Pl.'s Corrected Supplemental Mem. of Law in Opp.)
While the court recognizes that titles alone are not dispositive of the
issue, it notes that plaintiff conceded at the March 26, 2010 oral argument
that there is no evidence in the record to show that plaintiff continued to

(Pl.'s Corrected Supplemental Mem. of Law in Opp. at 9-11.)  The

record reflects that on October 6, 2005, the defendants'

Credentials Committee determined that it would defer plaintiff's

reappointment of privileges upon forwarding him a letter

"clarifying the hospital's philosophy, mission and Resident

involvement relative to patient care."  (Defs.' 56.1, Ex. I,

October 6, 2005 Credentials Committee Minutes at 3.)  This

letter, sent by the Credentials Committee to plaintiff on

October 6, 2005, reiterated the defendants' "philosophy and

mission relative to patient care . . . [which] includes close

communication with Residents on a 24 hour per day, 7 day per

week basis," asked plaintiff to sign the letter "to assure this

body that you are in agreement with the philosophy and mission

as we have described it" and stated "[i]f this process does not

meet with your approval, we would recommend that you seek an

institution which best suits your needs."  (Defs.' 56.1, Ex. J,

October 6, 2005 Letter.)  Plaintiff signed and returned the

letter and, upon the receipt of the signed letter from

perform Faculty Supervisor duties after his termination in 2004, and further
argued that such evidence may exist, but was not developed because it was not
a "prominent" issue.  (Tr. of 3/26/10 Oral Argument at 8-9, 22-26.)
Moreover, at the March 26, 2010 oral argument, plaintiff disputed some of the
facts defendants proffered to demonstrate the absence of an employer/employee
relationship, but could not point to any admissible evidence in the record
tending to show these facts are in dispute, such as whether plaintiff was
required to conduct rounds with the residents and whether the defendants
require plaintiff to be present a certain numbers of hours per day.  (Tr. of
3/26/10 Oral Argument at 22-26.)  Plaintiff also stated that he could not
answer: (1) whether the Hospital assigned plaintiff work; (2) who billed for
plaintiff's services; and (3) whether plaintiff treated patients at the
Hospital that he did not admit. (Tr. of 3/26/10 Oral Argument at 22, 26, 28-
29.)

plaintiff, the Credentials Committee announced on November 3, 2005, that it approved plaintiff's appointment to the medical staff for one year and that the plaintiff "should be advised that he will be monitored relative to the following activities: Residency supervision, professionalism and communication." (Defs.' 56.1, Ex. K, November 3, 2005 Credentials Committee Minutes at 3.)  Plaintiff received a letter to this effect on November 28, 2005.  (Defs.' 56.1, Ex. M, November 28, 2005 Reappointment Letter.)  Thus, the fact that defendants maintain a residency program as part of their business enterprise (*see* Defs.' 56.1 ¶ 4), and that, as a condition of plaintiff's continued relationship with defendants, plaintiff had to agree to supervise residents in furtherance of that aspect of defendants' business enterprise (Defs.' 56.1 ¶¶ 3-5 & Ex. J, October 6, 2005 Letter & Ex. M, November 28, 2005 Reappointment Letter), demonstrates that the defendants exerted some degree of control over plaintiff, at least to the extent he was supervising defendants' residents.  Similarly, the fact that the defendants could monitor plaintiff's "professionalism, communication and Resident supervision" also suggests that defendants exercised some degree of control over plaintiff. (Defs.' 56.1 Ex. M, November 28, 2005 Reappointment Letter.)

However, considering all of the evidence proffered, with an emphasis on the first *Reid* factor, the court finds that

the balance of factors tips in favor of finding that plaintiff was an independent contractor, and not an "employee" for purposes of his Title VII retaliation claim. *Cf. Salamon*, 514 F.3d at 230-32 (finding questions of material fact existed as to whether staff physician-hospital relationship met the common-law criteria for employment where defendant hospital exerted greater control over staff physician than simply ensuring compliance with hospital policies reflecting professional and governmental standards). Nonetheless, the court will assume for purposes of this motion that plaintiff qualifies as defendants' employee for purposes of his *prima case* retaliation case under Title VII and will analyze the remainder of plaintiff's *prima facie* case.

### b. Adverse Employment Action

Under Title VII, plaintiff must demonstrate that, in retaliation for a protected activity, he suffered a "materially adverse" employment action by his employer. *See, e.g.*, *Hicks*, 593 F.3d at 164-65. The Supreme Court has defined a "materially adverse" employment action supporting a claim for retaliation as any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Hicks*, 593 F.3d at 164-65. "Because 'not every action taken by an employer that is adverse to the employee is materially adverse,' the plaintiff must demonstrate that the

harm suffered was more than 'mere inconvenience.'"  Delaney v.
LaHood, No. 07-CV-471, 2009 WL 3199687, at *19 (E.D.N.Y. Sept.
30, 2009) (quoting *Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*,
572 F. Supp. 2d 233, 252 (D. Conn. 2008)); *see also White*, 548
U.S. at 68 ("[P]etty slights, minor annoyances, and simple lack
of good manners" will not generally deter employees from
complaining about discrimination.).  Whether a particular action
is sufficient to support a retaliation claim "will often depend
upon the particular circumstances." *White*, 548 U.S. at 69.

        Here, the one-year renewal of plaintiff's admitting
privileges and monitoring condition do not constitute a
materially adverse action as defined under *White*.  First, the
court finds, based on the undisputed evidentiary record, that
plaintiff's privileges have not been curtailed in any material
way.  The plaintiff admits, and the undisputed record
demonstrates, that in 2005 and thereafter: (1) plaintiff was
approved for each of the privileges he requested; (2) plaintiff
was granted the identical admitting privileges he had in 2003;
(3) the one-year term did not affect plaintiff's ability to
practice medicine at Jamaica Hospital; and (4) defendant
continued to renew plaintiff's privileges thereafter, albeit in
one-year renewal increments.[13] (Defs.' 56.1, Ex. G, 4/9/08

_____

[13] Although plaintiff states in his affidavit that "failing to renew my
privileges has had an adverse impact because I no longer have any privileges
at Jamaica Hospital," (Pl.'s Aff. ¶ 21), plaintiff admitted in his deposition

Deposition of Dr. Satish Deshpande at 60-64, 67-70, 129-130 &
Ex. N, September 29, 2003 Approved Delineation of Privileges &
Ex. O, November 28, 2005 Approved Delineation of Privileges.)
Plaintiff does not argue or proffer any evidence that the change
in the renewal period resulted anything other than the "mere
inconvenience" of having to submit an application one year
earlier than usual.  Moreover, as plaintiff's attorney
represented at oral argument, beginning in 2008, the defendants
returned to renewing plaintiff's privileges in two-year
intervals.  (Tr. of 3/26/10 Oral Argument at 79-80.)  This
reinstatement of plaintiff's prior privileges term provides
further evidence that plaintiff was not adversely impacted in
any material way.

    Likewise, the monitoring condition did not constitute
a materially adverse action as defined under *White*.  As this

---

that he has privileges at Jamaica Hospital, and the record conclusively
reflects that defendants granted these privileges to plaintiff in 2005.
(Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 60-64 ("Q:
Other than the timeframe and this monitoring, have your privileges changed in
any way from what you were privileged to do in 2003 and what you were
privileged to do in 2005? . . . A: Not for the practice of medicine at
Jamaica Hospital"), 67-70, 129-130 & Ex. N, September 29, 2003 Approved
Delineation of Privileges & Ex. O, November 28, 2005 Approved Delineation of
Privileges.)  *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)
("[F]actual allegations that might otherwise defeat a motion for summary
judgment will not be permitted to do so when they are made for the first time
in the plaintiff's affidavit opposing summary judgment and that affidavit
contradicts h[is] own prior deposition testimony."); *Bickerstaff v. Vassar
College*, 196 F.3d 435, 455 (2d Cir. 1999) ("It is beyond cavil that a party
may not create an issue of fact by submitting an affidavit in opposition to a
summary judgment motion that contradicts the affiant's previous deposition
testimony.") (internal quotation marks and ellipsis omitted).  Moreover,
plaintiff's attorney conceded at oral argument, after speaking with
plaintiff, that plaintiff continues to maintain privileges at Jamaica
Hospital, and that, as of 2008, these privileges were granted on a biennial
renewal basis.  (Tr. of 3/26/10 Oral Argument at 79-80.)

court noted in *Deshpande v. Medisys Health Network, Inc.*, No. 07-CV-0375, 2008 WL 2004160, at \*5 (E.D.N.Y. May 7, 2008), and as plaintiff concedes in his opposition (Pl.'s Opp. at 22-23), even under *White*'s more lenient standard, close monitoring, without more, is insufficient to constitute a materially adverse action under Title VII. *See, e.g., Stoddard v. Eastman Kodak Co.*, 309 Fed. Appx. 475, 479 (2d Cir. 2009) (stating it was "very unlikely" that plaintiff could show that having been "subjected to closer scrutiny" was the kind of adverse employment action required to establish a *prima facie* case of retaliation); *Dixon v. City of New York,* No. 03-CV-343, 2008 WL 4453201, at \*16 (E.D.N.Y. Sep. 30, 2008) ("[T]he law in this circuit, including the little that exists post-*White*, is clear that an employer's excessive scrutiny of an employee without more fails to satisfy the requirements for an adverse employment action [in the retaliation context]."); *Scott v. Cellco P'ship*, No. 98-CV-7245, 2007 WL 1051687, at \*2 (S.D.N.Y. Apr. 3, 2007) (reconsidering previous order in light of *White* and declining to alter previous conclusion that "excessive scrutiny" does not constitute adverse employment action); *Oliphant v. Conn. Dep't. of Transp.*, No. 02-CV-700, 2006 WL 3020890, at \*6 (D. Conn. Oct. 23, 2006) (applying *White* and stating that "[r]eprimands, threats of reprimands, and excessive scrutiny of an employee . .

. do not constitute materially adverse employment actions [in the retaliation context]")).

Although plaintiff admitted at his deposition that he was unaware of being "monitored" on a day-to-day basis,[14] he stated that the imposition of a monitoring condition impacted him nonetheless. Specifically, plaintiff testified that the monitoring condition caused him "stress and mental anguish and fear" and prevented him from applying for privileges at New York Hospital of Queens because that hospital wanted him to "attach the letter of current privileges with Jamaica Hospital," which, according to plaintiff, would have been "professional suicide," as his letter of current privileges indicated that plaintiff was to be monitored for one year. (Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 63-65.) The court finds that plaintiff's concern is not supported by the record. The defendants' November 28, 2005 letter, notifying plaintiff that his privileges had been granted for one year with monitoring, does not specify the privileges granted and thus, would not have been responsive to the purported request by New York Hospital of

---

[14] At his deposition, plaintiff testified, in relevant part, as follows.
Q: Have you been monitored?
A: I believe so.
Q: In what way have you been actually monitored?
***
A: I do not know how they are monitoring me. I'm not doing the monitoring; they are monitoring me.
Q: I understand. But what is happening to you as a result of this alleged monitoring? Do you have meetings? Do people talk to you? What's happened?
A: Nobody has spoken to me.
(Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 63.)

Queens for a letter of current privileges. (Defs.' 56.1, Ex. M,
November 28, 2005 Reappointment Letter.)  Rather, the specific
privileges granted by defendants to the plaintiff for the
relevant time periods are stated on a separate document,
entitled Delineation of Privileges, and remain unchanged from
the period prior to the alleged retaliation. (Defs.' 56.1, Ex.
N, September 29, 2003 Approved Delineation of Privileges & Ex.
O, November 28, 2005 Approved Delineation of Privileges.)  Thus,
the Delineation of Privileges could have been submitted and
plaintiff's unsupported statement that he was prevented from
applying for privileges at another hospital is contradicted by
the record. *See, e.g.*, *Mugavero v. Arms Acres, Inc.*, No. 03-CV-
05724, 2009 WL 890063, at * 9 (S.D.N.Y. Mar. 31, 2009) (finding
stress caused by closer scrutiny of plaintiff's work performance
insufficient to constitute a *prima facie* case of retaliation).

Critically, the court previously refrained from
dismissing plaintiff's retaliation claims at the motion to
dismiss stage because of plaintiff's allegation that the
monitoring and the one-year, rather than two-year, renewal of
his privileges "*were selectively applied only to him and not to
other similarly situated physicians.*"  *Deshpande*, 2008 WL
2004160, at *5 (emphasis added) (noting "[s]ome authority
suggests that increased monitoring, in combination with an
allegation that the monitoring was selectively applied, could

39

contribute to a finding that an adverse employment action has taken place."); *see also Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 363-64 (S.D.N.Y. 2006) (finding excessive scrutiny that was selectively applied to plaintiff "might meet the more lenient standard for Title VII retaliation claims for summary judgment purposes [post-*White*]"). Discovery, however, is closed and plaintiff has not availed himself of opportunities to submit admissible evidence establishing that the alleged adverse action was motivated by retaliatory animus. Plaintiff has not proffered evidence that any other similarly-situated physicians against whom residents lodged complaints were given two-year contracts and not subject to monitoring, or that plaintiff was the only physician who was singled out for this treatment among other similarly-situated physicians. (*See* Tr. of 3/26/10 Oral Argument at 33-34.) By contrast, defendants offer evidence that other physicians were also given one-year appointments in 2005. (Defs.' 56.1, Ex. H, Deposition of Dr. William Lynch at 43-44.)

Thus, plaintiff has failed to create a genuine triable issue of fact as to whether the one-year renewal of plaintiff's admitting privileges and monitoring condition could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination. However, even if the one-year renewal of plaintiff's admitting privileges and monitoring condition could arguably be considered adverse employment

actions as contemplated by *White*, the plaintiff's Title VII
retaliation claim nonetheless fails on the merits for the
following reasons.

### c. Causal Connection

The third element of plaintiff's *prima facie* case
requires plaintiff to demonstrate that there was a causal
connection between the protected activity and the alleged
adverse action.  To establish causation, a plaintiff must
establish that the retaliatory motive was "at least a
substantial or motivating factor" in the adverse action.
*Malacarne v. City Univ. of N.Y.*, 289 Fed. Appx. 446, 447 (2d
Cir. 2008) (citation omitted).  "A causal connection may be
established either *indirectly* by showing that the protected
activity was followed closely by discriminatory treatment, or
through other evidence such as disparate treatment of fellow
employees who engaged in similar conduct, or *directly* through
evidence of retaliatory animus directed against a plaintiff by
the defendant."  *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No.
05-CV-5109, 2007 WL 1149979, at *10 (S.D.N.Y. Apr. 18, 2007)
(quoting *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991))
(internal quotation marks omitted) (emphasis in original).  An
inference of causation is defeated: (1) if the allegedly
retaliatory action took place a sufficiently distant time after
the protected activity; or (2) if there was an "intervening

causal event that occurred between the protected activity and the allegedly retaliatory discharge." *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005).

Here, plaintiff has not proffered direct evidence of causation through discriminatory animus; nor has plaintiff proffered indirect evidence of causation through disparate treatment of fellow employees who engaged in similar conduct or through discriminatory treatment closely following protected activity. Plaintiff simply argues that the causation requirement is met because the protected activity preceded the adverse action. (Pl.'s Opp. at 21-22; Tr. of 3/26/10 Oral Argument at 33.) However, as plaintiff acknowledges in his own papers, while the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal [statutory or] constitutional right and an allegedly retaliatory action," the protected activity must be "closely followed" by the adverse action. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001).

Here, plaintiff was notified that he was reappointed for a one-year term with monitoring on November 28, 2005, five months after he filed his federal discrimination lawsuit on June 16, 2005, and eight months after he filed his EEOC complaint on

March 16, 2005.  Courts in this circuit have held periods of three months to be too attenuated for a finding of causation at the *prima facie* stage.  *See, e.g.*, *Mugavero*, 2009 WL 890063, at *12 (surveying cases and noting "three month gap is on the borderline of what courts in this Circuit have typically found sufficient" to establish a prima facie case of retaliation); *see also Stoddard*, 309 Fed. Appx. at 480 ("where the protected activity took place two months prior to the alleged adverse action, and where there is nothing other than that temporal proximity invoked to establish a retaliatory intent, the causal relationship is not established"); *Ruhling v. Tribune Co.*, No. 04-CV-2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("this Circuit [has] consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line") (collecting cases).  In the instant action, because the renewal of privileges at the Hospital took place on a set yearly or biennial schedule, the court does not find that this otherwise attenuated period preceding the alleged retaliation is too far removed from the plaintiff's protected activity to preclude a finding of an inference of causation.

Nevertheless, the undisputed evidence of the intervening resident complaints which were filed before the allegedly retaliatory action defeat any inference of causation.

Here, defendants renewed plaintiff's privileges in September
2003 for a two-year period, and plaintiff's privileges were
therefore up for renewal again in 2005. (Defs.' 56.1, Ex. F,
Resident Complaints & Ex. N, September 29, 2003 Approved
Delineation of Privileges.) After the 2003 privileges renewal,
but before plaintiff filed his EEOC complaint on March 16, 2005,
two residents filed formal complaints against the plaintiff on
October 25, 2003 and October 25, 2004, respectively. (Defs.'
56.1, Ex. F, Resident Complaints.) A third resident complaint
was filed against the plaintiff on March 23, 2005, before
plaintiff filed his federal discrimination lawsuit on June 16,
2005, before the October 6, 2005 Credentials Committee meeting
(where the status of plaintiff's admitting privileges was
discussed) and before the November 3, 2005 Credentials Committee
meeting (where the decision was made to grant plaintiff's
application for privileges for one year with a monitoring
condition.) (Defs.' 56.1, Ex. F, Resident Complaints & Ex. I,
October 6, 2005 Credentials Committee Minutes & Ex. K, November
3, 2005 Credentials Committee Minutes.) Thereafter, a fourth
resident complaint was filed against the plaintiff on November
11, 2005, pre-dating the Hospital's November 28, 2005 letter
advising plaintiff of the allegedly adverse employment action
that his privileges were granted for a one-year term with

monitoring.[15]  (Defs.' 56.1, Ex. F, Resident Complaints & Ex. M,
November 28, 2005 Reappointment Letter.)  Thus, without more
than the plaintiff's suspicions, the filing of the resident
complaints, which took place after defendants' 2003 evaluation
of plaintiff and before the plaintiff's protected activities,
defeat any inference of a causal connection.  *See, e.g.*,
*Malacarne*, 289 Fed. Appx. at 448 ("In light of the multiple,
contemporaneously documented, and non-discriminatory reasons for
her negative evaluation, plaintiff's mere allegation that her
complaint about sex discrimination was a 'substantial or
motivating factor' in an adverse action is unavailing")
(citation omitted).

　　　　Because the court finds that plaintiff has not made
out a *prima facie* case of retaliation, it need not proceed
further.  Nevertheless, for completeness, the court will address
defendants' argument that they have come forward with evidence
of legitimate, non-retaliatory reasons for the asserted adverse
employment actions.

### 2. Legitimate, Non-Retaliatory Reason

　　　　Under the *McDonnell Douglas* framework, the burden
shifts to defendants to offer a legitimate, non-retaliatory
reason for their action.  As discussed, *infra*, defendants
proffer evidence that, after the Hospital approved plaintiff's

---

[15] The Department of Medicine received an undated resident complaint about
plaintiff on December 22, 2005.  (Defs.' 56.1, Ex. F, Resident Complaints.)

privileges for two years without any special conditions on
September 29, 2003, the Hospital received documented complaints
from residents regarding plaintiff's overly critical, negative,
and insulting interactions with, and alleged mistreatment, of
them.  (Defs.' 56.1, Ex. F, Resident Complaints & Ex. N,
September 29, 2003 Approved Delineation of Privileges.)
Defendants contend that they renewed plaintiff's admitting
privileges for a one-year, rather than a two-year, period and
monitored his interactions with their residents in order to
address the complaints they received from some of the residents
whom plaintiff supervised, in order to ensure compliance with
ACGME requirements and with the philosophy of the Hospital.
(Defs.' 56.1, Ex. H, Deposition of Dr. William Lynch at 18-20,
41-42, 52-54 & Ex. D, March 14, 2007 ACGME Letter & Ex. E, ACGME
Program Requirements for Residency Education in Internal
Medicine.)  Thus, defendants have offered a legitimate, non-
retaliatory reason for their action.  *See, e.g.*, *Kaur v. New
York City Health and Hosps. Corp.*, --- F. Supp. 2d ----, 2010 WL
649284, at *17 (S.D.N.Y. Feb. 19, 2010) (nurse's negative
performance reviews constituted a legitimate non-retaliatory
reason for adverse employment action); *Dorcely v. Wyandanch
Union Free School Dist.*, 665 F. Supp. 2d 178, 217 (E.D.N.Y.
2009) (plaintiff's poor work performance, lack of
professionalism, insubordination and inappropriate workplace

behavior as reflected in multiple reports and evaluations constituted a legitimate non-retaliatory reason for adverse employment action).

### 3. Pretext

In response to defendants' legitimate, non-retaliatory reason for their action, plaintiff must respond with facts sufficient to warrant a reasonable jury finding by a preponderance of the evidence that "'a retaliatory motive *played a part* in the adverse employment actions even if it was not the sole cause.'" *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 126 (2d Cir. 2008) (quoting *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990) (emphasis added); *see also Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (stating that when the employer has articulated a legitimate non-retaliatory reason for the adverse action, the plaintiff must point to evidence that would be sufficient to permit a rational fact-finder to conclude that the employer's explanation is a pretext for impermissible retaliation).

Here, plaintiff argues that defendants' legitimate, non-retaliatory reason is merely a pretext for retaliation because some of the resident complaints were made after he filed his discrimination complaints in 2005. (Pl.'s Opp. at 23-24.) Further, plaintiff argues "[i]t is highly suspicious that three of the alleged five complaints were all written in such a close

47

time proximity, and jurors may reasonably infer that the complaints were sought and were written because of plaintiff's protected activities." (*Id.* at 24.) Neither of these arguments amounts to admissible evidence sufficient to establish an issue for trial as to whether defendants' purported reason for renewing plaintiff's privileges for one year rather than two, and monitoring his interactions with residents, was pretextual.

First, as previously noted, plaintiff's argument ignores the fact that it is undisputed that defendants received resident complaints *before* plaintiff engaged in the protected activities, as well as *before* the October 6, 2005 and November 3, 2005 Credentials Committee meetings, where defendants discussed the actions they would take in response to the multiple resident complaints about plaintiff.[16] (Defs.' 56.1, Ex. F, Resident Complaints & Ex. H, Deposition of Dr. William Lynch at 17-20, 41-42, 47, 52-54.) There is nothing in the record to indicate that the dates of these complaints were fabricated, or that the complaints were motivated by retaliatory animus. Instead, these resident complaints corroborate defendants' proffered explanation that the alleged adverse employment action was taken in response to the documented

---

[16] As described above, an additional complaint was filed before the November 28, 2005 letter, advising plaintiff of the allegedly adverse employment action.

criticism of plaintiff's interactions with the Hospital's residents, and belie plaintiff's arguments of pretext.

Furthermore, without more, the fact that some of the resident complaints were written in 2005, after plaintiff's protected activity took place, does not tend to show pretext or that a retaliatory motive played a part in the allegedly adverse employment action.[17]  Aside from his conclusory allegations, plaintiff does not provide any evidence from which a juror could infer that the resident complaints were fabricated.  Nor does plaintiff offer any evidence that residents were pressured to create these complaints in order to provide the defendants with a seemingly legitimate reason to retaliate against plaintiff by offering him privileges on a one-year renewal basis and monitoring his supervision of the residents.  Nor is there any evidence that the residents even knew about plaintiff's protected activity.  *See Martinez v. New York City Dept. of Educ.*, No. 04-CV-2728, 2008 WL 2220638, at *13 (May 27, 2008) ("there is nothing, beyond Plaintiff's bare conclusory allegations and mere temporal proximity, from which a rational fact-finder could conclude that the [alleged adverse employment action] constituted retaliation for protected activity"); *see also Ragusa v. Malverne Union Free School Dist.*, 582 F. Supp. 2d

---

[17] Notably, the only 2005 resident complaint that was written close in time to the alleged adverse employment action is the complaint dated November 11, 2005.

326, 349–50 (E.D.N.Y. 2008) (temporal proximity alone is insufficient to show that defendant's reasons were merely pretext for retaliation); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."). Rather, the fact that the residents continued to lodge formal complaints about plaintiff further demonstrates that defendants' decision to monitor plaintiff was based on legitimate concerns.

Moreover, plaintiff's argument that he was unaware of these resident complaints and that defendants never "cautioned [him] about any of his alleged shortcomings" (Pl.'s Opp. at 23–24; *see also* Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 74), does not establish pretext. First, the record suggests that plaintiff was aware that some residents had difficulties with his supervision.[18] (*See, e.g.*, Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 74–79.) Regardless, even if plaintiff was unaware of the resident complaints or defendants' dissatisfaction with his interactions with their residents, plaintiff's lack of knowledge would not

---

[18] For example, plaintiff testified that in June or July of 2004 he was shown at least one resident evaluation of him with scores between 3 and 4, although plaintiff testified that he did not know whether these were low or high scores. (Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 74–76.) Further, plaintiff testified that he believed the resident evaluations did not reflect his supervision skills, but instead "reflected the many times" he held the residents "accountable for where [he] came from" and the "values [sic] [he] stand[s] for." (Defs.' 56.1, Ex. G, 4/9/08 Deposition of Dr. Satish Deshpande at 76–77.)

establish pretext by defendants.  *See Brollosy v. Margolin,*
*Winer & Evens, LLP*, No. 04-CV-0873, 2006 WL 721433, at *9
(E.D.N.Y. Mar. 20, 2006) ("Courts in this Circuit have found
'the fact that an employee was unaware of [her] employer's
dissatisfaction is irrelevant to a court's inquiry on the
issue.'" (quoting *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297,
310-11 (S.D.N.Y. 2000))) (alteration in original); *Gambello v.*
*Time Warner Comms., Inc.*, 186 F. Supp. 2d 209, 222 (E.D.N.Y.
2002) (noting that defendants "still would be entitled to
summary judgment" even if they "had not made plaintiff aware of
his poor performance").

       Additionally, plaintiff's argument that Dr. Anthony
DiMaria, an attendee at the October 6, 2005 Credentials
Committee meeting and signatory of the November 28, 2005 Board
of Trustee Meeting Minutes, "could not explain why the
[C]redentials [C]ommittee voted to curtail plaintiff's
privileges and subject him to monitoring" (Pl.'s Mem. in Opp. at
24), fails to provide sufficient evidence from which a juror
could infer pretext.  As an initial matter, plaintiff mistakenly
identifies Dr. DiMaria as the defendants' 30(b)(6) witness and
ascribes enhanced importance to his testimony based on this
mistake.  (Pl.'s Mem. in Opp. at 24; Tr. of 3/26/10 Oral
Argument at 39-41.)  In fact, the record before the court
includes testimony by Vice President of Regulatory Affairs

William Lynch, M.D., the Hospital's designated 30(b)(6) witness, that the Credentials Committee discussed plaintiff's interactions with the residents and, as a result, elected to monitor plaintiff's activities involving the residents. (Defs.' 56.1, Ex. H, Deposition of Dr. William Lynch at 8-9, 18-20, 41-42, 52-54.) Plaintiff's citation to Dr. DiMaria's lack of memory about the Credentials Committee meetings in the face of Dr. Lynch's direct testimony on the issues fails to create a disputed issue of material fact, much less an inference of pretext. *See Ghirardelli v. McAvey Sales & Serv., Inc.*, 287 F. Supp. 2d 379, 391 (S.D.N.Y. 2003) (plaintiff's bare assertion against witness's sworn testimony "does not raise a genuine issue of material fact; rather, it pits sworn testimony against speculation, conjecture and self-serving conclusions"); *see also Lawton v. Alitalia-Linee Aeree Italiane-Societa*, No. 97-CV-4472, 1999 WL 632846, at *5 (S.D.N.Y. Aug. 18, 1999) ("speculation . . . cannot serve to contradict the sworn testimony of the witnesses . . . [and] is not enough to create a genuine issue of material fact.").

In the absence of any circumstantial evidence of pretext, plaintiff attempts to rely on the allegations underlying the discrimination and retaliation claims he brought before the Supreme Court of New York, Queens County, in *Deshpande v. TJH Medical Svcs., et. al*, Index No. 27808/2005,

and before this court in *Deshpande v. TJH Medical Svcs., et. al*, No. 05-CV-2894. (Pl.'s Opp. at 23; Tr. of 3/26/10 Oral Argument at 35-39.) Specifically, plaintiff argues that a jury might consider defendants' lack of sympathy for plaintiff's complaints about the preference for Gujaratis and "apparent eagerness to usher him out of his salaried position as evidence of retaliatory intent." (Pl.'s Opp. at 23.) However, as both the Supreme Court of New York and this court have previously found, there was no evidence that similarly-situated Gujarati physicians or other employees received preferential treatment or that plaintiff was retaliated against. (*See* Defs.' 56.1, Ex. S, 6/19/08 Short Form Order in 27808/2005 (finding plaintiff failed to raise a triable issue of fact as to either his discrimination or retaliation claims where, *inter alia*, he had not "refuted the evidence that the contract requirement was imposed upon all similarly situated physicians and that the only other physician who refused to sign the contract as also discharged despite being a Gujarati Indian."); Tr. of 3/26/10 Oral Argument at 64-79 (dismissing plaintiff's discrimination and retaliation claims in *Deshpande v. TJH Medical Svcs., et. al*, No. 05-CV-2894 because, *inter alia*, plaintiff failed to proffer any evidence that defendants' legitimate business reason for terminating plaintiff's employment was pretextual). As in those related cases, here, plaintiff fails to proffer evidence of retaliatory

motive showing that similarly-situated Gujaratis or other employees received preferential treatment or any other any admissible evidence from which a reasonable jury could return a verdict in his favor.[19]

Thus, although plaintiff argues that defendants' asserted reasons for renewing his privileges for one year rather than two, and for monitoring plaintiff's interactions with the residents are pretextual, he presents no competent evidence to support his allegations.  Viewing the full range of circumstantial evidence in the light most favorable to the plaintiff, and further assuming, *arguendo*, that plaintiff was an "employee" of defendants at the relevant time and was able to establish a *prima facie* case of retaliation, plaintiff nonetheless fails to proffer evidence sufficient to support an inference that defendants' actions were in fact taken in retaliation for plaintiff's protected activity.  Summary judgment on plaintiff's Title VII retaliation claim is accordingly warranted.  *See, e.g., Richardson*, 532 F.3d at 126 (affirming granting of summary judgment where plaintiff's "broad allegations of retaliation" were "unsubstantiated by *any* corroborative evidence" and therefore insufficient to show an

---

[19] The fact that plaintiff continues to enjoy admitting privileges with defendants, now with renewal occurring on a biennial basis, further belies plaintiff's retaliation claims.

issue of fact existed as to whether a retaliatory motive played a part in the adverse employment action).

### C. Plaintiff's State and City Law Retaliation Claims

Plaintiff has also alleges retaliation claims under New York State and City Laws. The parties agree that the retaliation claims under the NYHRL and the NYCHRL are analyzed pursuant to the burden-shifting framework established in *McDonnell-Douglas.* (Defs.' Mem. at 9 n.1; Pl.'s Opp. at 16-17.) *See also Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006)) ("[R]etaliation claims under the [NYHRL] are generally governed by the same standards as federal claims under Title VII"); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) ("Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims.")

### 1. Supplemental Jurisdiction

District courts have discretion to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §§ 1367 (a), (c). In determining whether to exercise supplemental jurisdiction, courts must "balance the traditional 'values of judicial economy, convenience, fairness, and comity'

in deciding whether to extend jurisdiction." *Kolari v. New
York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)
(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350
(1988)).  Based on the balance of the *Cohill* factors, this court
will exercise supplemental jurisdiction over plaintiff's claims
arising under the NYHRL and the NYCHRL.  *See, e.g.*, *Kaur*, 2010
WL 649284, at *19 (exercising supplemental jurisdiction where
court found, *inter alia*, that plaintiff's NYHRL and NYCHLR
retaliation claims could "be determined without further trial
proceedings and without entanglement with any difficult issues
of state law" (citing *Brazinski v. Amoco Petroleum Additives
Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993))); *Fleming v. MaxMara
USA, Inc.*, 644 F. Supp. 2d 247, 267 (E.D.N.Y. 2009), *aff'd*, 2010
WL 1170247 (2d Cir. Mar. 25, 2010) (exercising supplemental
jurisdiction over plaintiff's NYCHRL claim where the NYCHRL
claims arose from the same facts and relied on the same evidence
as plaintiff's federal claims and substantial resources had been
expended developing and reviewing the voluminous factual record
and the numerous legal arguments in the case); *see also Winter
v. Northrup*, 334 Fed. Appx. 344, 345-46 (2nd Cir. May 29, 2009)
(affirming district court's exercise of supplemental
jurisdiction and finding *Cohill* factors supported where "(1)
discovery had been completed, (2) the state claims were far from

novel, and (3) the state and federal claims were substantially identical").

### 2. NYHRL Retaliation Claim

Because NYHRL retaliation claims are subject to the same analysis as retaliation claims under Title VII, for the same reasons discussed, *supra*, defendant's motion for summary judgment on plaintiff's retaliation claim under the NYHRL is granted. *See, e.g.*, *Ludwig v. Rochester Psychiatric Ctr.*, 347 Fed. Appx. 685, 686 n.1 (2d Cir. 2009) (Title VII and NYHRL retaliation claims are "subject to the same analysis.")

### 3. NYCHRL Retaliation Claim

While claims under the NYCHRL[20] are more liberally construed than claims under Title VII and the NYHRL*, see, e.g.*, *Suarez v. Am. Stevedoring, Inc.*, No. 06-CV-6721, 2009 U.S. Dist. LEXIS 105910, at *71-73 (E.D.N.Y. Nov. 10, 2009), the NYCHRL "does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Julius v. Dep't of Human Res. Admin.* No. 08-CV-3091, 2010 WL 1253163, at *5 (S.D.N.Y. March 24, 2010) (internal citations and quotation marks omitted).

---

[20] The NYCHRL provides, for example, that any retaliation "need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment . . . provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7).

"The Local Civil Rights Restoration Act of 2005

('Restoration Act'), N.Y.C. Local Law No. 85 (2005), requires

that claims brought under the NYCHRL be evaluated separately

from counterpart claims brought under Title VII. . . ."

*Kolenovic v. ABM Indus. Inc.*, No. 09-CV-0601, 2010 WL 227660, at

*1 (2d Cir. Jan. 21, 2010); see also *Loeffler v. Staten Island*

*Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (acknowledging the

legislative intent to "abolish 'parallelism' between the

[NYCHRL] and federal and state anti-discrimination law.")

Courts have interpreted the NYCHRL as requiring:

> an "independent liberal construction analysis in all
> circumstances, even where State and federal civil rights
> laws have comparable language.  The independent analysis
> must be targeted to understanding and fulfilling what the
> statute characterizes as the [NYCHRL's] 'uniquely broad and
> remedial' purposes, which go beyond those of counterpart
> State or federal civil rights laws."

*Cretella v. Liriano*, 633 F. Supp. 2d 54, 70 (S.D.N.Y. 2009)

(quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62,

70-71, 872 N.Y.S.2d 27, 34-35 (1st Dep't 2009).  With these

standards in mind, the court considers plaintiff's NYCHRL claim.

The court assumes for purposes of this motion only

that plaintiff was an employee at the relevant time under the

NYCHLR[21] and has made out a *prima facie* case of retaliation under

---

[21] Independent contractors could fall within the protections of NYCHRL if
considered "natural persons" who "carry out work in furtherance of an
employer's business enterprise."  N.Y.C. Admin. Code § 8-102(5); *see also*
*O'Neill v. Atl. Sec. Guards, Inc.*, 250 A.D.2d 493, 494, 671 N.Y.S.2d 976 (1st
Dep't 1998).

the NYCHLR.[22]  Viewing the facts in a light most favorable to the

plaintiff, the court finds that summary judgment on plaintiff's

NYCHRL retaliation claim is appropriate even under the more

liberal construction of the NYCHRL.  As discussed extensively

above, defendants have put forth evidence of a legitimate, non-

retaliatory reason for their action, and plaintiff has not

"responded with facts sufficient to warrant a reasonable jury

finding by a preponderance of the evidence that 'the legitimate

reasons offered by the defendant[s] were not [their] true

reasons, but were a pretext for [retaliation].'"  *Fleming v.*

*MaxMara USA, Inc.*, No. 09-CV-3183, 2010 WL 1170247, at *2 (2d

Cir. Mar. 25, 2010) (quoting *Richardson*, 532 F.3d at 125 n.11).

---

[22] As under Title VII and the NYHRL, NYCHRL retaliation claims are analyzed under the same three-step, *McDonnell Douglas* burden-shifting framework. *Fleming,* 644 F. Supp. 2d at 269.  To establish a prima facie NYCHRL retaliation claim, a plaintiff must demonstrate that "'(1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action that disadvantaged the plaintiff; and (3) that a causal connection exist[s] between the protected activity and the adverse employment action.'" *Selmanovic v. NYSE Group, Inc.*, No. 06-CV-3046, 2007 WL 4563431, at *5 (S.D.N.Y. Dec. 21, 2007) (citing *Farrugia v North Shore Univ. Hosp.*, 13 Misc. 3d 740, 752, 820 N.Y.S.2d 718, 727 (N.Y. Sup. Ct. 2006).  As to the second factor, under the NYCHRL, as amended in 2005, a plaintiff need not show "a materially adverse change in the terms and conditions of employment," but, instead must only show that "the retaliatory . . . acts complained of must be reasonably likely to deter a person from engaging in protected activity."  Admin. Code § 8-107 (7)(v); *see also Williams*, 61 A.D.3d at 70-71, 872 N.Y.S.2d at 34-35 ("no challenged conduct may be deemed nonretaliatory [under the NYCHRL] before a determination that a jury could not reasonably conclude from the evidence that such conduct was, in the words of the statute, 'reasonably likely to deter a person from engaging in protected activity.'"); *Farrugia,* 13 Misc. 3d at 752, 820 N.Y.S.2d at 727 ("Unlike the federal standard which requires that the manifestations of retaliation be material, under the [NYCHRL], the 1991 Amendment made it clear that it was illegal to retaliate "in any manner.").  Here, however, even if a jury could reasonably conclude from the evidence that the defendants' conduct was "reasonably likely to deter a person from engaging in protected activity," the plaintiff faces the same hurdles discussed, *infra*, in demonstrating a causal connection between the protected activity and the adverse employment action.

Thus, because the record demonstrates that, apart from his naked arguments and suspicions, plaintiff cannot link the one year renewal of privileges and the monitoring condition to a retaliatory motivation, defendants' motion for summary judgment on plaintiff's retaliation claim under the NYCHRL is granted. *See, e.g.*, *Kaur*, 2010 WL 649284, at *20 (granting motion for summary judgment on plaintiff's NYCHRL retaliation claim, in addition to plaintiff's Title VII retaliation claim, where plaintiff "failed to offer evidence from which a reasonable fact-finder could conclude that her treatment by Defendant was motivated by retaliatory animus . . . [and] failed to link any action on behalf of Defendant to a retaliatory motivation"); *Fleming*, 644 F. Supp. 2d at 269-70 (granting motion for summary judgment on plaintiff's NYCHRL retaliation claim, in addition to plaintiff's Title VII retaliation claim, where plaintiff "could not rebut defendants' legitimate, non-discriminatory reasons proffered for their actions through evidence that the reasons are pretextual, or that retaliatory animus was nevertheless a motivating factor").

## CONCLUSION

Defendants' motion for summary judgment is granted in its entirety and plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.*, the New York Human Rights Law, N.Y. Exec.

Law § 290 *et seq*., and the New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq*. are dismissed. The Clerk of the Court is respectfully directed to enter judgment for the defendants and to close the case.

**SO ORDERED.**

Dated: April 16, 2010
       Brooklyn, New York

_____    /s/_____

KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York
